IN THE UNITED STATES COURT OF FEDERAL CLAIMS
Washington, D.C.

**BID PROTEST**

| | |
|---|---|
| CORE DC LLC, | |
| Plaintiff, | |
| v. | CFC No. _____ |
| THE UNITED STATES OF AMERICA, | Judge _____ |
| Defendant. | |

**COMPLAINT FOR TEMPORARY RESTRAINING ORDER, AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND DECLARATORY JUDGMENT**

CORE DC, LLC ("CORE DC"), through its undersigned counsel, brings this bid protest action against the Defendant, the United States of America, seeking injunctive and declaratory relief[1], and states as follows:

**NATURE OF THE CASE**

1. This pre-award bid protest action is for declaratory and injunctive relief directing the Defendant, acting through the United States Department of Justice, Federal Bureau of Prisons ("BOP" or the "agency") to comply with statutory and regulatory requirements for small business set-asides in federal procurement. Specifically, the Court should temporarily or permanently

---

[1] Once the Department of Justice assigns an attorney to this matter, CORE DC plans to discuss with the Department of Justice whether the agency will agree to a voluntary stay. CORE DC reserves the right to seek a temporary restraining order or preliminary injunction if the Parties cannot reach a satisfactory agreement on actions to protect CORE DC's interests.

1

enjoin BOP from proceeding with the procurement and making award and then direct BOP to set aside the protested procurement for only small business concerns.

2. The procurement is for Residential Reentry Center ("RRC") services under Request for Proposals No. 15BRRC25R00000018 (the "RFP") for males only, with the facility located within one of the following areas: the city limits of Washington, DC; Montgomery County, Maryland; Prince George's County, Maryland; Arlington County, Virginia; or Fairfax County, Virginia. Home Confinement radius is within 150 miles RRC facility. NAICS 623990 applies to this procurement.

3. The RFP is contrary to the Small Business Act and Federal Acquisition Regulation (FAR) "Rule of Two" small business set aside requirements. FAR 19.502-2(b) [2]; 15 U.S.C. § 644. Contrary to the FAR, the BOP failed to make reasonable efforts to ascertain whether it is likely that "[o]ffers will be obtained from at least two responsible small business concerns; and [a]ward will be made at fair market prices." FAR 19.5-2-2(b). Any reasonable market research and subsequent agency analysis would show that the BOP had a reasonable expectation of receiving offers from two or more responsible small business concerns at a fair market price.

4. The BOP Rule of Two analysis was arbitrary, unreasonably cabined, and was unduly restrictive in requiring more information from prospective offerors than reasonably necessary to establish that the Rule of Two was met. The contemporaneous BOP record shows

---

[2] On December 8, 2025, the Department of Justice adopted the FAR Part 19 deviation. The new rule provides: "For contracts above the micro-purchase threshold, the contracting officer must set the contract aside for small business if there is a reasonable expectation of obtaining offers— (1) From two or more responsible small business concerns; and (2) That are competitive in terms of fair market prices, quality, and delivery." FAR 19.104-1(a) (Deviation). The Contracting Officer determination here was made under the old (or standard) FAR 19.502-2(b) and that is the rule that applies to the protested determination. In any event, the Rule of Two is met under the new rule as well.

2

that the BOP had a reasonable expectation of receiving offers from two or more responsible small business concerns at fair market prices.

5. CORE DC is materially prejudiced by BOP's unlawful action. CORE DC is a minority and veteran owned small business under NAICS 623220 and 623990 that currently operates the BOP RRC (males only) in Washington, D.C. CORE DC has a substantial chance of receiving contract award if the procurement is conducted in accordance with the Small Business Act and associated FAR small business requirements. By permitting large businesses to compete under the solicitation, the BOP is substantially reducing CORE DC's likelihood of receiving award, contrary to statutory and regulatory mandates.

6. BOP violated FAR 19.502-2(b) and 15 U.S.C. § 644 and otherwise acted in an unreasonable, arbitrary, and capricious manner by (i) failing to reasonably conduct market research and improperly determining that there are not at least two responsible small businesses that could be expected to submit offers at fair market prices (referred to as the "Rule of Two"); and (ii) requiring more information than reasonably necessary to establish the Rule of Two was met.

7. Instead of reasonably ascertaining whether it is likely that offers will be received from at least two small business concerns consistent with FAR 19.502-2(b), the BOP arbitrarily evaluated the Request for Information ("RFI") responses it received from prospective small business offerors, including CORE DC, as if the submissions were proposals submitted in response to an RFP.

8. CORE DC seeks temporary and preliminary injunctive relief staying award and pre-award activities pending completion of this action.

9. CORE DC seeks preliminary and permanent injunctions requiring the Defendant to compete the above-referenced procurement in accordance with statute and regulation by setting aside the procurement for small businesses.

## PRE-FILING NOTICE

10. On January 8, 2026, Counsel for Plaintiff CORE DC sent the required Pre-Filing Notice of Bid Protest Case pursuant to 28 U.S.C. § 1491(b) to the Clerk of the United States Court of Federal Claims, United States Department of Justice, counsel for the BOP, and the contracting officer for this procurement, by email at approximately 3:30PM.

## PARTIES

11. Plaintiff CORE DC is a corporation organized under the laws of the Commonwealth of Virginia, with its principal place of business at 1020 Bladensburg Road NE, Washington, District of Columbia 20002.

12. Defendant is the United States government acting through BOP, an agency within the United States Department of Justice.

## JURISDICTION AND STANDING

13. Jurisdiction in this Court is based on the Tucker Act, 28 U.S.C. § 1491(b)(1).

14. The remedies sought are authorized by the Tucker Act, 28 U.S.C. § 1491(b)(1) and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

15. CORE DC is an interested party under 28 U.S.C. § 1491. But for the agency's improper action in conducting the procurement on an unrestricted basis, CORE DC would have a substantial chance for award.

## STATEMENT OF THE CASE

A.   **The RFP**

16. On February 28, 2025, BOP issued the solicitation for RRC services for males only, with the facility located within one of the following areas: the city limits of Washington, DC; Montgomery County, Maryland; Prince George's County, Maryland; Arlington County, Virginia; or Fairfax County, Virginia. Home Confinement radius is within 150 miles RRC facility. Proposals were due April 29, 2025.

17. On April 21, 2025, CORE DC filed its first pre-award protest at GAO. Comp. Gen. B-423475; B-423475.2.

18. In response, on May 5, 2025, the BOP notified GAO that it was taking voluntary corrective action and that the BOP would extend the due date for responses to the solicitation, issue a new request for information, and revisit and update its market research.

19. On May 7, 2025, CORE DC responded:

> We appreciate the BOP's prompt action. Since the BOP will extend the date proposals are due, issue a new Request for Information ("RFI"), and revisit and update its market research, the BOP action renders the protests moot. We also understand that, as part of its market research, the BOP will contact the four entities identified in the CORE DC protests as small businesses.
>
> We understand GAO's practice where agency corrective action renders a protest moot is to dismiss the protest. *Dyna-Air Eng'g Corp.*, B-278037, Nov. 7, 1997, 97-2 CPD ¶ 132. We have no objection to dismissal on that basis with the understanding that, following the agency's completion of its corrective action, if the solicitation is not cancelled or set-aside for small businesses, CORE DC may file a new protest of that action if otherwise consistent with GAO's Bid Protest Regulations.

20. On May 8, 2025, GAO dismissed the B-423475; B-423475.2 protests as moot.

21. On August 12, 2025, the BOP responded to CORE DC counsel: "BOP has completed its market research and no changes to the RFP due date are expected."

5

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

22.  BOP subsequently issued RFP Amendment 3 with a proposal due date of August 28, 2025.

23.  As amended, the RFP provides the contractor up to 240 days post-award to commence performance of the contract. The RFP further explains:

> The minimum requirement for all services will be satisfied by the Government with male offenders only. For in-house RRC services, the contractor shall ensure total 300 beds are available for males. Home Confinement services estimated maximum is 150 (male only) placements.
>
> Offerors are advised that all usage amounts are estimates only. The estimates above are not a representation by the Government to the offeror that the Government will require services for more than 120 in-house male Federal offenders or 60 home confinement placements per month, or that conditions affecting the requirement will be stable. These estimates do not constitute a Bureau of Prisons usage guarantee or a guarantee of revenue to the offeror. Payment shall be made for actual consumption/usage when the ADP exceeds 120 in-house male Federal offenders or 60 home confinement placements for male only.

24.  The estimated value of the procurement exceeds the simplified acquisition threshold. The RFP does not include FAR 52.219-6, Notice of Total Small Business Set-Aside, and is not set aside for small businesses.

25.  On August 15, 2025, CORE DC timely protested to the GAO, challenging BOP's decision to conduct this procurement on an unrestricted basis. Comp. Gen. B-423475.3.[3]

26.  Following the GAO decision in December 2025, the BOP further amended the RFP, with proposals now due January 20, 2026.

**B.  Small Business Concerns**

---

[3] The Court reviews procurement protests de novo and owes no deference to a preceding decision of the Government Accountability Office. The GAO decision is not controlling on the Parties or on this Court and this Court does not act as an appeals court for the Comptroller General's decisions. This filing includes evidentiary material from the BOP evaluation record before GAO. To avoid confusion, because the GAO and Court records may defer in substance, organization or pagination, we are not including in this filing citations to the GAO record other than to the RFP.

███████████████████████████████████████████████████████████
███████████████████████████████████

27.     CORE DC is a minority and veteran owned small business under NAICS 623220 and 623990 that currently provides RRC services (males only) under the incumbent contract in Washington, D.C. Based on its market research, the BOP had a reasonable expectation that CORE DC was a responsible small business concern that would submit an offer at a fair market price.

28.     In addition to CORE DC, the GAO protest record demonstrated that there are at least two other responsible small business contractors for which the BOP had a reasonable expectation that they would submit offers, such as ████████████████████████████████ ██████████████████████████████ Based on its market research, the BOP had a reasonable expectation that ██████████████ were responsible small business concerns that would submit offers at a fair market price.

29.     The GAO protest record also indicated that there were other responsible small business concerns for which the BOP had a reasonable expectation that they would submit offers at fair market prices or for which the BOP failed to conduct reasonable market research.  For example, the BOP admitted that ██████████████████████████ has "actual operational experience within the geographic scope." ████████ has the RRC contract for ████ ████████ ██████████████████ area.  According to the BOP, "████████ did not respond to either RFIs or outreach via email." But it is unclear to what extent the BOP attempted to reach ████████.  Given that ████████ is an existing BOP contractor, presumably the BOP is in regular communications with ████████ and the BOP should have been able to speak ██████████ It is unreasonable for the BOP to ignore such close-at-hand information.

30.     Any reasonable market research would have identified two or more responsible small business contractors that could submit offers at fair reasonable prices, including CORE DC, ██████████████████████████

7

### C.     The BOP's Unreasonable Rule of Two Analysis

31.     The FAR, in implementing the goals of the Small Business Act, declares that "[i]t is the policy of the Government to provide maximum practicable opportunities in its acquisitions to small business."  FAR 19.201(a).  One such opportunity is the small-business set-aside, the "purpose" of which "is to award certain acquisitions exclusively to small business concerns," FAR 19.501(a), and a set-aside "ha[s] priority over acquisitions using full and open competition."  FAR 19.203(e).

32.     Pursuant to the FAR 19.502-2(b), known as the Rule of Two, the contracting officer "shall" set aside a procurement valued above the simplified acquisition threshold when he has a "reasonable expectation" that "offers will be obtained from at least two responsible small business concerns . . . and (2) award will be made at fair market prices."  The decision to set aside a procurement is not discretionary.  Rather, the use of the term "shall" in this section requires the Government to set aside acquisitions when the Rule of Two is satisfied.  *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016).

33.     Under the FAR Rule of Two, all that is required to mandate a set aside is "a reasonable expectation" that at least two responsible small businesses will submit bids at fair market prices. FAR 19.502-2(b).  FAR Part 9 "responsibility" and FAR Part 15 evaluation criteria, such as capability, capacity, and past performance, are not pass/fail tests at the Rule of Two stage.  Rather, those issues are assessed during post-proposal evaluation and responsibility stages.

34.     A Rule of Two analysis is not a FAR Part 15 proposal evaluation.  Rather, the Rule of Two mandates a set-aside when the agency has a reasonable expectation of receiving proposals from at least two responsible small business concerns and the award can be made at a fair market price. FAR 19.502-2(b).

8

███████████████████████████████████████
████████████████████████████

35. It is well established that when a regulation's language is plain, the sole function of the courts–at least where the disposition required by the text is not absurd–is to enforce it according to its terms. Thus, where the language is plain and admits of no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion. The plain language of FAR 19.502-2(b) resolves the protest here.

36. The Rule of Two is part of a larger framework in the FAR established to benefit small businesses. All that is required is a reasonable expectation. The Rule of Two is a simple, preliminary step, requiring none of the rigorous analysis of proposal review. The threshold for meeting the criteria is purposefully low.

37. The Rule of Two's "reasonable expectation" test can be satisfied without any capability analysis of the particular interested small businesses. *See, e.g.*, *McKing Consulting Corp. v. United States*, 78 Fed. Cl. 715, 725 (2007) (Rule of Two could be met "[i]f four companies expressed interest in the project before the actual [s]olicitation was even issued").

38. Contrary to statute and regulation, the BOP arbitrarily failed to set aside the procurement for small business concerns pursuant to the Rule of Two.

39. The BOP erroneously conflated a Rule of Two set-aside determination with a proposal evaluation under FAR Part 15 or a responsibility determination made pursuant to FAR 9.104-1 and arbitrarily held CORE DC, ████████████████████ to a higher standard than provided in the FAR.

40. For example, the BOP Rule of Two analysis arbitrarily concluded that CORE DC, ██████████████ were not "capable," since they did not have operational facilities, did not provide a site address with zoning details, or lacked federal experience. These conclusions are arbitrary and unreasonable given that the RFP provides that the contract does not start operations

9

[REDACTED]

until 240 days after award. The current availability of an offeror's potential RRC facility has no bearing on whether an offeror is qualified. Similarly, federal level experience with halfway house and home confinement services is not a pass/fail requirement in the RFP.

41.     The BOP's own contemporaneous evaluation records support CORE DC's position. By the BOP's own admission, the current status of an offeror's RRC facility has no bearing on whether an offeror is qualified ("In analyzing [REDACTED] RFI #2 response, the CO stated: [REDACTED]

**D.     Irreparable Injury**

42.     CORE DC will be irreparably harmed if the procurement is permitted to proceed since CORE DC, as a small business, will face unfair competition from large businesses competing for work that Congress determined should be reserved for small business concerns.

43.     CORE DC will be irreparably harmed by any award under the above referenced solicitation because CORE DC would lose the opportunity to continue performing the RRC services it is currently completing under an incumbent contract in Washington D.C. without having a fair chance to compete.

44.     More specifically, (a) the loss of the contract without a fair opportunity to compete would irreparably injure CORE DC because CORE DC would lose long-term personnel in whom CORE DC has made a substantial investment; and (b) CORE DC would lose the opportunity for future revenues and profits from continued performance. CORE DC will not be able to recover the lost business, revenues, and profits in the absence of being able to compete for and be awarded the follow-on contract.

10

45. Staying the procurement during the pendency of this action will not harm the government and in fact will save the government time, money, and effort in having to recompete the procurement in accordance with statute and regulation.

46. CORE DC is already performing under an incumbent contract that includes sufficient time for the BOP to solicit a proposal from CORE DC. CORE DC is ready, able, and willing to promptly submit a proposal as soon as the BOP includes the set-aside terms in the RFP. Moreover, if the government requires continued service at the RRC beyond the current end of CORE DC's incumbent contract, CORE DC is ready, able, and willing to provide continuing service to ensure the continuity of services to male offenders and avoid any disruption to ongoing RRC activities.

47. No third party would be harmed by staying the procurement at this stage. A stay would spare third parties the risks and costs associated with preparing and submitting a proposal, including but not limited to responding to clarifications or discussions, preparing and presenting an oral presentation, and possibly submitting an amended proposal, which would all be negated and rendered moot if this Court sustains CORE DC's Complaint and orders BOP to take corrective action.

48. The interests of economy, efficiency, and conservation of energy and resources all favor the procurement being stayed for the brief period that it will take the Court to resolve the issues raised in this Complaint.

49. A stay is in the public interest. It is beyond doubt that the public interest lies in its ability to have faith in the procurement process and for offerors to receive an effective remedy when the government violates those rules. A level playing field is at the heart of the federal procurement process.

## CLAIMS FOR RELIEF

### COUNT I – ARBITRARY AND CAPRICIOUS PROCUREMENT DECISION
### BOP's Market Research and Subsequent Decision to Conduct the Procurement on an Unrestricted Basis Was Contrary to Law and Was Unreasonable

50.      The allegations in paragraphs 1-49 are incorporated here as if set out in full.

51.      Before issuing a procurement on an unrestricted basis, the FAR Rule of Two requires that the CO set aside any acquisition over the simplified acquisition threshold for small business participation when there is a reasonable expectation that (1) offers will be obtained from at least two responsible small business concerns; and (2) award will be made at fair market prices. FAR 19.502-2(b).

52.      The BOP Rule of Two analysis and determination was unreasonably cabined, restrictive, and incomplete. There is a reasonable expectation of receiving proposals from at least two responsible small business concerns at fair market prices.

53.      Agency action is arbitrary and unreasonable when an agency decision lacks a rational basis, fails to consider crucial factors, relies on improper factors, or is unsupported by the evidence in the record. The BOP's decision to solicit the procurement on an unrestricted basis is the result of an arbitrary and unreasonable Rule of Two analysis contrary to the Small Business Act and the FAR.

54.      The GAO protest record demonstrated that there are at least three responsible small business concerns interested in this procurement for which the BOP had a reasonable expectation that they would submit proposals at fair market prices.

55.      Nonetheless, as evidenced by the GAO protest record, BOP analyzed the small business concern's RFI responses during the market research phase of its Rule of Two analysis as if the RFI responses were proposals responding to the solicitation itself.

56. There is a line that separates a reasonable evaluation under the Rule of Two to determine the existence of responsible small business contractors and a comprehensive evaluation akin to an actual proposal evaluation.

57. BOP's Rule of Two evaluation of the responding small business concerns crosses this line, directly undermining the policy considerations behind the Rule of Two. This heightened level of scrutiny applied by the BOP in its Rule of Two analysis was never contemplated by Congress or the FAR.

58. BOP's decision not to set-aside the procurement is the result of the BOP's failure to conduct reasonable market research and implementation of an unreasonably cabined, restrictive, and incomplete investigation of the identified small business concerns, conduct that is arbitrary, unreasonable, and contrary to law.

59. CORE DC is materially prejudiced since conducting the procurement outside the required set-aside process unfairly increases competition by permitting large businesses to compete for work that Congress determined should be reserved for small businesses.

**COUNT II – TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTION, AND DECLARATORY RELIEF
BOP's Decision to Conduct the Procurement on an Unrestricted
Basis Was Arbitrary, Capricious, and an Abuse of Discretion,
and Violated the Applicable FAR Provisions**

60. The allegations in paragraphs 1-59 are incorporated here as if set out in full.

61. BOP's determination that setting aside the instant procurement for small businesses is not required under the Rule of Two violates FAR 19.502-2(b) and is arbitrary, capricious, and without a reasonable basis, and thus constitutes an abuse of discretion.

62. The BOP failed to reasonably conduct market research. Any reasonable market research would have found that there are at least two small business offerors that the BOP would

13

have reasonably expected to submit proposals at fair market prices, including CORE DC, ███████████████████████████.

63. BOP's decision not to set-aside is contrary to FAR 19.502-2(b) and is otherwise contrary to the Small Business Act, the FAR and the APA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff CORE DC LLC ("CORE DC") respectfully requests this Court to enter judgment in CORE DC's favor and against Defendant, and to provide the following relief:

1. A Temporary Restraining Order and preliminary injunctive relief precluding the Defendant from continued pre-award activities and award under the RFP until after the Court has made a ruling on the merits.

2. Permanent injunctive relief requiring BOP to amend the RFP to include the mandatory set-aside provisions (e.g., FAR 52.219-6, Notice of Total Small Business Set-Aside) and to issue the amended RFP on a restricted basis for small businesses only.

3. A judgment declaring that Defendant violated federal procurement law and regulation, by improperly soliciting the RFP on an unrestricted basis.

4. Injunctive relief directing the Defendant to compete the RFP in accordance with the applicable statutes and regulations.

5. An award to Plaintiff of costs, including reasonable attorney' fees, pursuant to 28 U.S.C. §§ 2201 and 2202.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

6. Such other relief as the Court deems just and equitable, including, without limitation, bid and proposal costs.

                                                                                  Respectfully submitted,

Date: January 12, 2026                                       By: /s/ Jonathan D. Shaffer
                                                                                  Jonathan D. Shaffer
                                                                                  HAYNES AND BOONE, LLP
                                                                                  8000 Towers Crescent Drive, Suite 900
                                                                                  Tysons Corner, Virginia 22182
                                                                                  Tel: (703) 847-6280
                                                                                  Fax: (703) 847-6312
                                                                                  Email: Jonathan.Shaffer@haynesboone.com
                                                                                  *Counsel for CORE DC LLC*

*Of Counsel*:
John M. Tanner (Email: John.Tanner@haynesboone.com)
HAYNES AND BOONE, LLP

██████████████████████████        ██████████████████

## CERTIFICATE OF SERVICE

      I certify that I have caused a true and accurate copy of the Complaint to be delivered by EFC and by electronic mail on the 12th day of January 2026 to the following:

      United States Department of Justice
      Commercial Litigation Branch
      1100 L Street, NW, 8th Floor
      Washington, D.C. 20530
      Fax: (202) 305-2062
      Email: nationalcourts.bidprotest@usdoj.gov


                                                /s/ Jonathan D. Shaffer
                                                Jonathan D. Shaffer